UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATRICE A.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-0410 RSM

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits, and requests remand for benefits or further proceedings. Plaintiff contends the ALJ constructively reopened Plaintiff's prior application, erred in rejecting Plaintiff's symptom testimony, and erred in evaluating four medical opinions. Dkt. 13. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## I.     BACKGROUND

Plaintiff is currently 56 years old, has at least a high school education, and has worked as a contract specialist. Dkt. 11, Admin. Record ("AR") 59, 88. Plaintiff applied for benefits on January 26, 2016, alleging disability as of December 13, 2013. AR 77, 169-73. Plaintiff's application was denied on initial review. AR 77-90. After the ALJ conducted a hearing on October 2, 2018, the ALJ issued a decision finding plaintiff not disabled. AR 15-24.

## II.     THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 13, 2013, through her date last insured of March 31, 2017.

**Step two:** Through the date last insured, Plaintiff had the following severe impairments: Depressive disorder, anxiety disorder, posttraumatic stress disorder ("PTSD"), and spinal degenerative disc disease.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC"):** Through the date last insured, Plaintiff could perform medium work, with additional limitations. She could engage in unskilled, repetitive, routine tasks in two-hour increments. She could not have contact with the public. She was capable of working in proximity to, but not in coordination with, coworkers. She could have occasional contact with supervisors. She would be off-task 10 percent of the time, but could still meet minimum production requirements of the job.

**Step four:** Through the date last insured, Plaintiff could not perform past relevant work.

**Step five:** Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, so Plaintiff was not disabled.

AR 15-24. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-3.

### III. DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.     Reopening**

Plaintiff argues that the ALJ constructively reopened Plaintiff's prior claim. Dkt. 13 at 2. Plaintiff filed a prior application for disability benefits in December 2014, alleging disability as of December 13, 2013. AR 67, 161-65. That claim was denied on January 20, 2015. AR 67-75. Plaintiff did not seek review of that denial. Plaintiff filed her current application on January 26, 2016, again alleging a disability onset date of December 13, 2013. AR 77, 169-73.

An ALJ may apply *res judicata* to bar reconsideration of an alleged period of disability for which a determination has already been made, such as when a prior application is denied and not appealed. *See* 20 C.F.R. § 404.989(a); *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (citing *Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985)). However, "where the Commissioner considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period," that prior period is *de facto* reopened. *Lester*, 81 F.3d at 827 n.3 (quoting *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988)). That is what occurred here.

The ALJ did not mention Plaintiff's prior application. *See* AR 15-24. The ALJ stated that Plaintiff had to show disability after January 2015 because the maximum retroactive period was 12 months prior to the application date. AR 15. But the ALJ did so because the Social Security Act provides that claimants may only recover benefits for a maximum retroactive period

of 12 months prior to the application date.[3] *See* 42 U.S.C. § 423(b). The ALJ did not do so because Plaintiff's prior application had already been decided. *See* AR 15. The ALJ repeatedly discussed Plaintiff's claim in the context of her alleged onset date of December 13, 2013. *See* AR 16, 17, 21. The ALJ therefore *de facto* reopened Plaintiff's prior claim. *See Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001).

**B.       Plaintiff's Symptom Testimony**

Plaintiff testified that she had difficulty interacting with people, including customers at her prior job. *See* AR 47, 51-52, 209. She testified that she had trouble with coworkers, as she was harassed by a coworker at her last job to the point that she needed an accommodation. AR 40. She testified that she has panic attacks. AR 54. Plaintiff testified that her symptoms affected her memory, concentration, ability to complete tasks, and her ability to get along with others. AR 213, 275. She testified that she did not get along well with supervisors. AR 214.

Where, as here, an ALJ determines that a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity "by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet." *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). The ALJ discounted Plaintiff's testimony because he found it inconsistent with her daily activities. AR 21. The ALJ also discounted Plaintiff's testimony because he found it inconsistent with her work history. *Id.* Relatedly, the ALJ found that Plaintiff stopped working due to situational

---

[3] The ALJ used imprecise language in describing the retroactivity limit. A claimant may only recover benefits for a maximum period of twelve months prior to the application date. 42 U.S.C. § 423(b). But the claimant may establish disability onset prior to that time and still recover benefits. The issue is then whether the disability continued into the period for which the claimant could receive benefits.

ORDER AFFIRMING THE COMMISSIONER'S
FINAL DECISION AND DISMISSING THE CASE
WITH PREJUDICE - 4

factors at her last job rather than her alleged impairments, which undermined Plaintiff's allegations. *Id.*

The ALJ's first reason for rejecting Plaintiff's testimony—inconsistency with her daily activities—falls short of clear and convincing. An ALJ may reject a plaintiff's symptom testimony based on her daily activities if they contradict her testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603).

The ALJ noted, among other things, that Plaintiff shopped for groceries, trained and walked her dogs, managed her own personal care, and socialized with friends on websites like Facebook. AR 21. None of these activities contradict Plaintiff's testimony and none are transferable work skills. The ALJ thus erred in rejecting Plaintiff's testimony based on her daily activities.

The ALJ's remaining reasons for rejecting Plaintiff's symptom testimony withstand scrutiny. The ALJ noted that Plaintiff's panic and anxiety symptoms existed well before the alleged onset date. AR 21, 476-77. Yet Plaintiff worked in multiple complex jobs throughout that time. AR 21, 228-35. The ALJ reasonably interpreted this evidence to conclude that Plaintiff's conditions did not prevent her from working.

Along the same lines, the ALJ reasonably concluded that Plaintiff stopped working due to situational factors rather than her disability. Plaintiff left her last job because she was being

ORDER AFFIRMING THE COMMISSIONER'S
FINAL DECISION AND DISMISSING THE CASE
WITH PREJUDICE - 5

harassed, and her employer moved her workspace back into an area near the harasser. AR 21, 40, 47-48. The ALJ correctly noted that having to deal with a harasser is not a common (or acceptable) factor in all jobs. AR 21. Given Plaintiff's work history, the ALJ thus reasonably concluded that Plaintiff stopped working due a unique situation at her last job rather than due to her impairments.

Although the ALJ erred in rejecting Plaintiff's testimony based on her daily activities, that error was harmless. "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina*, 674 F.3d at 1115 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). The ALJ reasonably rejected Plaintiff's testimony based on her work history, and his erroneous analysis of Plaintiff's daily activities does not undermine that rejection.

## C. Medical Evidence

Plaintiff challenges the ALJ's evaluation of four medical opinions. Dkt. 13 at 3-14. Plaintiff argues that the ALJ (1) erred in rejecting the opinions of examining doctor Katrina Hebert, M.D.; (2) erred in evaluating the opinions of non-examining doctor Eugene Fleece, Ph.D.; (3) erred in rejecting the opinions of treating doctor Tanya Porashka, M.D.; and (4) erred in rejecting the opinions of vocational rehabilitation counselor Rosalind Burrell. *Id.*

### 1. Katrina Hebert, M.D.

Dr. Hebert evaluated Plaintiff on March 22, 2016, on behalf of the Department of Veterans Affairs ("VA") as part of a disability benefits exam. AR 805-19. Dr. Hebert opined that Plaintiff may have excessive absences due to lack of motivation, and may struggle with tardiness due to sleep disturbance. AR 818. Plaintiff's "[a]ttention and concentration problems

may result in errors and reduced efficiency of task performance." *Id.* Plaintiff had problems interacting effectively with supervisors, coworkers, and customers due to irritability/anger and her strong tendency to isolate. *Id.* Plaintiff was "likely to have problems adapting to changes in the workplace or to new tasks." *Id.* "She would likely perform better in a job that involved more routine or repeated tasks." *Id.* Plaintiff "should not work in a setting with lots of people." AR 818-19.

The ALJ gave Dr. Hebert's opinions no weight. AR 20. The ALJ reasoned that Dr. Hebert's opinions were "written as possibilities" because she used the word "may." *Id.* The ALJ determined that Dr. Hebert "clearly based" her opinions on Plaintiff's self-reports and third-party statements from Plaintiff's husband "without reference to objective evidence." *Id.*

An ALJ may reject the contradicted opinions of a treating or examining doctor by giving "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830 (citing *Andrews*, 53 F.3d at 1043). The ALJ did not meet this standard when he rejected Dr. Hebert's opinions as too heavily based on Plaintiff's self-reports rather than objective evidence. Dr. Hebert performed a clinical interview and mental status evaluation. *See* AR 809-18. These "are objective measures and cannot be discounted as 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Plaintiff has nonetheless failed to show harmful error. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)) (holding that the party challenging an administrative decision bears the burden of proving harmful error). The ALJ did not err in rejecting Dr. Hebert's opinions that were qualified in terms of issues Plaintiff "may" have (i.e. Dr. Hebert's opinions related to tardiness, absenteeism, and attention and concentration). An ALJ may reject an opinion that reflects a doctor's uncertainty about the

extent to which the claimant is restricted.  *See Valentine v. Comm'r of Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (finding no error where the ALJ excluded from the RFC a possible limitation that the doctor listed only as a recommendation on how to deal with the claimant's PTSD symptoms).

Several of Dr. Hebert's opinions were not equivocal, but Plaintiff has not shown how the RFC fails to account for those opinions.  Dr. Hebert opined that Plaintiff could have problems interacting effectively with supervisors, coworkers, and customers.  AR 818-19.  The ALJ limited Plaintiff to occasional contact with supervisors, no coordination with coworkers, and no public contact.  AR 19.  Dr. Hebert opined that Plaintiff would likely have problems adapting, and would do better with routine, repetitive tasks.  AR 818.  The ALJ limited Plaintiff to "unskilled, repetitive, routine tasks in [two]-hour increments."  AR 19.  The RFC does not have to perfectly match a doctor's opinions to adequately account for them.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).  Plaintiff has therefore failed to show that the ALJ harmfully erred in evaluating Dr. Hebert's opinions.

### 2. Eugene Fleece, Ph.D.

Dr. Fleece reviewed Plaintiff's medical records and opined as to her mental limitations. AR 77-90.  Dr. Fleece opined that Plaintiff "could understand and recall very simple workplace tasks."  AR 86.  Plaintiff could execute simple three-step commands, and "attend to simple, repetitive duties for two hour periods with effort."  AR 87.  Plaintiff would have difficulty being punctual and meeting scheduling requirements, "but it does seem possible [Plaintiff] could comply."  *Id.*  Plaintiff would miss one day a month due to her depression and anxiety.  *Id.*

Plaintiff could not do work that involved significant exposure to the general public. *Id.* Plaintiff "could take and use simple, direct, non-inflammatory supervision." *Id.* Plaintiff "could adapt to workplace changes which are simple, well-explained/clearly modeled, and occasionally gradual." AR 88.

The ALJ gave Dr. Fleece's opinions significant weight, but "[did] not fully adopt all limitations identified." AR 20. The ALJ rejected Dr. Fleece's opinion that Plaintiff would miss one day of work per month because that limitation "was in the context of a job with work duties that involved interaction with coworkers as well as work without significant exposure to the public." AR 20-21. The RFC contained greater limitations, precluding coordinated work activities with coworkers and all contact with the public, "thereby removing the most significant barriers that historically had affected [Plaintiff's] work capacity." AR 21.

Plaintiff has again failed to show harmful error. *See Ludwig*, 681 F.3d at 1054 (citing *Shinseki*, 556 U.S. at 407-09). Plaintiff's primary argument is that the ALJ erred in rejecting Dr. Hebert's opinions, and concordantly erred in accepting Dr. Fleece's opinions over those of Dr. Hebert. As explained above, the ALJ did not err in rejecting Dr. Hebert's opinions. *See supra* Part III.C.1. Moreover, an ALJ need not give reasons for accepting a medical opinion. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010). The ALJ thus did not err in accepting most of Dr. Fleece's opined limitations.

The ALJ did reject Dr. Fleece's opinion that Plaintiff would miss one day of work a month, but Plaintiff has still failed to show harmful error. The ALJ reasonably discounted this opinion because the RFC included greater social restrictions than Dr. Fleece proposed, removing one of the main obstacles Plaintiff had confronted in her past work that led to absenteeism. AR 21. Contrary to Plaintiff's assertion, the ALJ did not substitute his own lay opinion on a medical

issue for that of the doctor, but rather appropriately translated the evidence into a succinct RFC. *See Rounds*, 807 F.3d at 1006 (citing *Stubbs-Danielson*, 539 F.3d at 1174).

### 3. Tanya Porashka, M.D.

Dr. Porashka, one of Plaintiff's treating doctors, wrote four letters on Plaintiff's behalf. AR 694-97. On January 20, 2012, Dr. Porashka reported that Plaintiff's "physical and mental health is greatly affected to a point that it has been impossible for her to do her job." AR 695. Dr. Porashka recommended that Plaintiff take sick leave until February 2, 2012, with the plan to return to work on February 6, 2012. *Id.* On February 3, 2012, Dr. Porashka recommended that Plaintiff take additional sick leave for another week. AR 696. On December 9, 2013, Dr. Porashka stated that she supported Plaintiff's request for a safe work environment. AR 697. On January 8, 2015, Dr. Porashka wrote that Plaintiff had a history of PTSD, generalized anxiety disorder with panic attacks, and unspecified depressive disorder. AR 694. Dr. Porashka wrote that Plaintiff "reports that unfortunately since 12/2013 she has not been able to work due to ongoing issues with anxiety and depression." *Id.*

The ALJ gave Dr. Porashka's letters no weight because they "did not contain an actual opinion." AR 20. Dr. Porashka "only referenced [Plaintiff's] self-report that she had not been able to work since December 2013." *Id.*

Plaintiff has not shown that the ALJ harmfully erred in rejecting Dr. Porashka's statements. *See Ludwig*, 681 F.3d at 1054 (citing *Shinseki*, 556 U.S. at 407-09). Dr. Porashka did not express an opinion as to Plaintiff's functional limitations. *See* AR 694-97. She merely acknowledged that Plaintiff reported dealing with a hostile work environment in her last job, and supported Plaintiff's request for a safe work environment. *See id.* The ALJ did not err in analyzing these facts, and did not err in giving no weight to Dr. Porashka's statements. *See*

*Turner*, 613 F.3d at 1222-23.

### 4. Rosalind Burrell

Ms. Burrell wrote a memorandum regarding Plaintiff's eligibility for vocational rehabilitation services from the VA. AR 236-37. Ms. Burrell reported that Plaintiff could not feasibly work. AR 236. Plaintiff was "restrict[ed] or limit[ed] from working in a fast-paced or stressful work environment, when the ability to maintain focus or concentration, or exacting performance is required, when required to work prolonged work hours or shift work, or when required to work with or around large groups of people."

The ALJ gave Ms. Burrell's statements no weight. AR 20. The ALJ determined that Ms. Burrell did not identify any bases for her statements, and she was not a treating provider. *Id.*

An ALJ must give germane reasons for rejecting the opinions of a counselor. *See Molina*, 674 F.3d at 1111. The ALJ did so here, as Ms. Burrell did not identify the bases for her opinion and she had no treating relationship with Plaintiff. *See id.* (finding that a physician's assistant's failure to provide supporting reasoning or clinical findings was a germane reason to reject her opinion). Plaintiff has therefore failed to show that the ALJ harmfully erred in rejecting Ms. Burrell's statements.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 30 day of October 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE